# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### ASHEVILLE DIVISION
### 1:07cv117

| | | |
|---|---|---|
| NATASHA SINCLAIR | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| MOBILE 360, INC.; AUTO | ) | |
| ADVANTAGE, INC.; KEVIN GEAGAN | ) | |
| and GERALD ELDRIDGE, | ) | |
| | ) | |
| Defendants and | ) | |
| Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL KITCHEN, | ) | |
| | ) | |
| Third-Party Defendant | ) | |
| and Counter claimant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MOBILE 360, INC.; AUTO | ) | |
| ADVANTAGE, INC.; KEVIN | ) | |
| GEAGAN; and GERALD | ) | |
| ELDRIDGE, | ) | |
| | ) | |
| Counter Defendants. | ) | |
| | ) | |
| _____ | ) | |

Pending before the Court is Defendants' Motion to Dismiss (#74).

Defendants move to dismiss Plaintiff's Complaint and Third-Party Defendant

Michael Kitchen's Counterclaims pursuant to the Court's inherent power and, in the alternative, Rule 41(b) of the Federal Rules of Civil Procedure. Upon consideration of the entire record in this case, and after the benefit of an evidentiary hearing, the Court **GRANTS** Defendants' motion (#74).

## I.     Background

Plaintiff Natasha Sinclair brought this action against Defendants asserting claims for violations of the North Carolina Wage and Hour Act, the Fair Labor Standards Act ("FLSA"), the Violation of Equal Pay Act, and for breach of contract. The claims all arise out of Defendants' alleged employment of Plaintiff to perform manual labor, primarily painting and body repair of automobiles. Plaintiff, however, alleged that Defendants never paid her any wages.

Similarly, Kitchen asserted counterclaims for violations of the North Carolina Wage and Hour Act, the Fair Labor Standards Act, and for breach of contract. Kitchen also contends that he worked for Defendants performing manual labor, primarily painting and body repair of vehicles. Kitchen contends that Defendants failed to pay him at the agreed upon rate and failed to pay him overtime.

At the close of discovery, Defendant Auto Advantage, Inc. ("Auto Advantage") moved for summary judgment on all of the claims asserted by

Plaintiff and Kitchen. Defendant Auto Advantage argued that it was entitled to summary judgment because the breach of contract claims were preempted by the FLSA, and the remaining claims all failed because it did not employ either Plaintiff or Kitchen.

Plaintiff and Kitchen, who were both represented by counsel at the time, filed a response to the Motion for Summary Judgment. As part of their response, Plaintiff and Kitchen each submitted affidavits. Both Plaintiff and Kitchen attached work logs to their affidavits, which they contend accurately set forth the hours they worked each day. In his affidavit, Kitchen states:

> Pursuant to instructions from Eldridge and Geagan, Ms. Sinclair and I each recorded the amount of hours we worked each day in a work hours notebook, and reported the hours we worked to Eldridge, and sometimes Geagan daily. My work hours notebook is attached as Exhibit B.

(Kitchen Aff. ¶ 5, Jun. 16, 2008 (#51-2 at p. 2).) Similarly, Plaintiff states that:

> Pursuant to instructions from Eldridge and Geagan, Mr. Kitchen and I each recorded the amount of hours we worked each day in a work hours notebook, and reported our hours to Eldridge, and sometimes Geagan, daily. My work hours notebook is attached as Exhibit A.

(Sinclair Aff. ¶ 5, Jun. 16, 2008 (#51-1 at p. 2).)

In addition to the work logs, Kitchen and Plaintiff attached five invoices. These five invoices represented some of the auto body repair work they performed. (Kitchen Aff. ¶ 8 (#51-2 at p. 2); Sinclair Aff. ¶ 8 (#51-1 at p. 2).) Kitchen and

Plaintiff submitted the invoices as evidence supporting their claim that Auto Advantage was their employer because each invoice listed Auto Advantage Inc./Mobile360 Inc. in the Company line and listed Auto Advantage's address, 5998 Asheville Highway, Hendersonville, NC, on the address line. (Kitchen Aff. ¶ 8; Ex. C to Kitchen Aff. (#51-6).)  Kitchen and Plaintiff further stated that these invoices were given to the customers of Auto Advantage/Mobile 360.  (Kitchen Aff. ¶¶ 7-8 (#51-2); Sinclair Aff. ¶¶ 7-8 (#51-1).)

In its reply brief, Defendant Auto Advantage argued that the affidavits of Kitchen and Plaintiff were submitted in bad faith, and that the invoices were fabrications.  Specifically, Defendant Auto Advantage stated that, "[t]hese invoices appear to have been altered, falsified or falsely created using a template on a laptop computer which was provided to Mr. Kitchen and which Mr. Kitchen never returned after Mobile 360 ceased operations." (Def. Auto Advantage's Reply Br. at p. 6 (#58 at p. 6).)  In support of its contention that these invoices were fabricated, Defendant Auto Advantage submitted the affidavit of Gerald Eldridge, the former Vice President of Operations for Defendant Mobile 360.  In his affidavit, Eldridge stated that he "provided Mr. Kitchen with a laptop computer, which contained an estimating template [he] created to enable Mr. Kitchen to complete and print out estimates for customers while on-site."  (Eldridge Aff. ¶ 7, Jun. 20, 2008 (#58-3).)

He further explained that the five invoices submitted by Kitchen and Plaintiff were prepared on the template Eldridge created, and that they appeared to have been "altered, falsified or falsely created using the template on the laptop computer that Mr. Kitchen never returned." (Id. at ¶¶ 11-12, 18 (# 58-3).)

Counsel for Kitchen and Plaintiff then filed a motion requesting a hearing regarding Defendant Auto Advantage's contention that the invoices were fabricated, which the Court granted. (Order Granting Mot. Hr'g, Jul. 2, 2008 (#60).) In its Order, the Court warned both parties of the seriousness of these allegations and instructed Plaintiff and Kitchen that if the allegations were true, such conduct could result in the dismissal of this action. (Id. at p. 2 (#60).)

The Court further instructed the parties that:

> Inasmuch as plaintiff and third-party defendant have been accused of creating false documents on a computer, counsel for plaintiff and third-party defendant shall be directed, as an officer of this court, to take custody of the computer upon which documents were generated and bring such computer to court. No alterations shall be made to the contents of such computer in the interim. At the expense of the parties, a forensic examination shall be conducted on such computer to determine the date such documents were created. Counsel for the parties are instructed to meet in advance of the hearing to select a forensic examiner and have the results ready for the hearing.

(Id. at p. 2-3 (#60).)

Shortly before the scheduled evidentiary hearing, Defendants moved to

continue the hearing. Defendants stated that counsel for Plaintiff and Kitchen had informed Defendants that they do not possess the laptop computer at issue. (Defs.' Mot. Continue at p. 2 (#61).) Because the parties could not locate the laptop, they could not obtain a forensic examination of the computer. (Id.) The Court granted Defendants' motion and rescheduled the hearing for a later date. (#62.)

Two days before the rescheduled hearing, Plaintiff and Kitchen moved to continue the hearing. (#63.) In their motion, they reiterated that the computer at issue was not in their possession. (Pl.'s Mot. Continue at p. 2 (#63).) Kitchen, however, was able to find "pieces" of a laptop. (Id.) Counsel for Kitchen and Plaintiff represented in the motion that:

> Kitchen has located pieces of what appears to be the case of a laptop computer that was destroyed when it fell onto a highway long before the summary judgment motion was filed. Those plastic pieces are in the possession of Kitchen's counsel.

(Id.) In contrast to the pieces of a laptop turned over by Kitchen, Defendants produced two computers that were used by Mobile 360, including the former laptop of Eldridge. (Id. at 3-4.) Both sides examined these computers in order "to catalogue and review Mobile 360 documents on the computer." (Id.)

The Court did not continue the hearing, and on August 8, 2008, the parties appeared for an evidentiary hearing as set forth in the Court's July 2, 2008, Order. (#60.) At the hearing Counsel for Plaintiff and Kitchen reiterated that neither

individual had the laptop at issue in their possession. (Hr'g Tr. 3, Aug. 8, 2008.)

Counsel represented to the Court as follows:

> I questioned both my clients about the existence of a computer that they had used while they were working for Mobile 360, and they don't have such computer. What Mr. Kitchen has are a few plastic shards of a computer that he had used that fell off the top of his car and was smashed in the roadway.
>
> I've got those shards with me, if anybody cares to look at them. I'm not absolutely certain that they came from a laptop computer, but they have that look to them.
>
> He was not able to recover any other part of the computer, the hard drive or otherwise, because it was smashed by the cars and he was in fear of injury.

(Id.) At the hearing, the Court agreed to allow the parties additional time for discovery, including discovery regarding the alleged fabrication of evidence, and to enter a new Scheduling Order. The Court did not take up the Motion to Dismiss or hear evidence. Meanwhile, Defendant Auto Advantage withdrew its Motion for Summary Judgment. (#64.)

On November 21, 2008, Defendants filed a second Motion for Summary Judgment on behalf of all the Defendants. (#72.) In addition, they filed a Motion to Dismiss (# 74), which requested that the Court dismiss this action as the result of the submission of fabricated and falsified evidence by Kitchen and Plaintiff. Subsequently, counsel for Plaintiff and Kitchen filed a Motion to Withdraw, stating

that his clients had terminated his services and were no longer communicating with him. (Mot. Withdraw at p. 1 (#78).) After holding a hearing on the Motion to Withdraw, the Court granted the motion and instructed Plaintiff and Kitchen of their obligation to respond to the pending motions. (Order, Dec. 16, 2008 (#80).)

Plaintiff and Kitchen then submitted responses *pro se* to both the Motion for Summary Judgment and Motion to Dismiss. (#81, #82, #83, #84.) In their responses to the Motion to Dismiss, both Plaintiff and Kitchen made numerous unsubstantiated allegations of fraud against Defendants. (Kitchen Resp. Mot. Dismiss (#82); Pl. Resp. Mot. Dismiss (#84).) In addition, they asserted a variety of threats allegedly made by Defendants, including that Defendants would poison them or expose them to madness inducing toxins, hire people to stalk them, and record aspects of their private life. (Kitchen Resp. Mot. Dismiss (#83); Pl. Resp. Mot. Dismiss (#84).)

As to the allegedly falsified evidence, Kitchen reiterated that the invoices were real and accurate. (Kitchen Resp. Mot. Dismiss at 8 (#84).) He further explained that the invoices were related to the in house work he and Plaintiff performed on several DHL vans. (Id.) Because the paint would not stick to the DHL vans as a result of the excess exhaust residue on the surface of the van,

Kitchen and Plaintiff had to undertake significant steps to wash and prep the vehicles prior to painting them so that the paint would bond to the vehicle. (Id.) All of this work, however, was performed in Hendersonville as free demonstrations to bring in more customers. (Id. at pp. 8-9.)

As to the work journals, Plaintiff and Kitchen stated that the work journals were hand written copies, rather than the originals. (Id. at p.11 (#84); Pl. Resp. Mot. Dismiss at pp. 8-9 (#82).) Apparently, Kitchen contends that he mistakenly provided Defendants with a hand written copy, rather then the original. (Kitchen Resp. Mot. Dismiss at p. 11 (#84); Pl. Resp. Mot. Dismiss at pp. 8-9 (#82).) Finally, Kitchen and Plaintiff contend that any mistakes in the work journals were the result of Kitchen attempting to make hand written copies in pencil after being exposed to toxins. (Kitchen Resp. Mot. Dismiss at p. 11 (#84); Pl. Resp. Mot. Dismiss at pp. 8-9 (#82).)

The Court never ruled on the Motion to Dismiss or addressed whether the evidence submitted by Kitchen and Plaintiff was fabricated. Instead, the Court entered an Order granting Defendants' Motion for Summary Judgment on all the claims. (Order, Jan 16, 2009 (#91).) The Court then entered judgment against Plaintiff and Kitchen and in favor of Defendants. (#92.) Plaintiff and Kitchen appealed the Court's Order. On appeal, the United States Court of Appeals for the

Fourth Circuit vacated the judgment of the Court and remanded this case for further proceedings. (#115, #116 & #117.)

On June 17, 2011, the Court held a status conference. Philip Roth, new counsel for Plaintiff and Kitchen, appeared on behalf of his clients. At the status conference, the parties agreed that in light of the Fourth Circuit vacating the Court's Order, the Defendants' Motion to Dismiss was also back before the Court. (Hr'g Tr. at 4, Jun 17, 2011.) At the request of counsel for Plaintiff and Kitchen, the Court allowed counsel to file an additional response to the Motion to Dismiss. (Id. at 5, 8.) The Court also explained to the parties that it did not believe it could rule on the Motion to Dismiss on the papers and that an evidentiary hearing would be necessary. (Id. at 5, 8-9.) Specifically, the Court stated, "I don't see how I can make a decision about that motion to dismiss without evidence being presented on both sides, but I'll leave that up to you good lawyers." (Id. at 9.)

The Court then entered an Order (#120) establishing the schedule for Plaintiff and Kitchen to file a response to the Motion to Dismiss (#74). The Court also set a hearing for July 15, 2011. As the Court explained twice in its Order, "the undersigned will conduct an evidentiary hearing in regard to defendant's Motion to Dismiss." (Order, Jun. 22, 2011 (#120).) The Notice of Hearing entered by the Court, also specified that the hearing was an evidentiary hearing as

to Defendants' Motion to Dismiss.  (Notice of Hr'g, Jun. 24, 2011.)   As the record reflects, the clear purpose of the evidentiary hearing was for the Court to hear evidence on the issue of the allegedly fabricated or falsified evidence and determine if, in fact, Plaintiff and/or Kitchen fabricated or falsified evidence submitted to the Court.

On July 15, 2011, the Court held an evidentiary hearing on the Motion to Dismiss.  Counsel for Plaintiff and Kitchen was present.  His clients, however, were not present at the hearing.

At the hearing, Defendants called Eldridge, who was the Vice President of Operations of Mobile 360 during the relevant time period, to testify.  (Hr'g Tr. 38, Jul. 15, 2011.)  Eldridge testified that the bulk of Mobile 360's work was paintless dent removal, minor windshield repair, and touch up painting for independently owned companies that represented DHL.  (Id.)   Typically, the repairs were done on-site at the customer's location.  (Id.)  He also testified that Mobile 360 never did free demonstrations in-house.  (Id. at 54.)

As to the work journals, Eldridge testified that neither Plaintiff nor Kitchen ever submitted these journals to him.  (Id. at 40-41, 80.)  Moreover, during the time Plaintiff contends she was performing work for Defendants, Plaintiff never reported her hours to Eldridge.  (Id. at 46.)

Eldridge also testified that the invoices[1] submitted by Kitchen and Plaintiff had been altered.  (Id. at 44, 51.)  He stated that the company supplied Kitchen with a laptop containing the template for generating these invoices, which Kitchen never returned.  (Id. at 45-46.)  Unlike the five invoices at issue, invoices were never submitted to the customers listing Auto Advantage/Mobile 360 in the Company line.  (Id. at 42, 67.)  Moreover, the invoices never contained the language estimate for Mobile360, Inc. or Auto Advantage Inc. at the bottom like the five examples submitted by Kitchen and Plaintiff.  (Id. at 43-44.)  Finally, while the work done on customers' vehicles varied significantly, the work descriptions listed on the five invoices at issue were virtually identical.  (Id. 70-79.)

At the hearing, counsel for Plaintiff and Kitchen opted not to introduce any evidence.  Neither Plaintiff nor Kitchen were called to testify to rebut the allegations of fraud.  No affidavits of Plaintiff or Kitchen were offered denying the allegations.  The only statements by Plaintiff and Kitchen that they did not in fact fabricate these documents are the unsworn statements contained in their original *pro se* responses to the Motion to Dismiss and responses to the Motion for

---

[1] The Court notes that the parties and witness referred to these documents as estimates rather than invoices at the hearing.  In their affidavits, Plaintiff and Kitchen referred to the documents as invoices.  Irrespective of whether they are in fact invoices or estimates, the Court will refer to the documents solely as invoices for the sake of clarity.

Summary Judgment. (#81, #82, #83 & # 84.)  It is based on this evidentiary record that the Court bases its ruling.

## II.    Analysis

It is now well settled that a district court has the inherent power to sanction conduct that constitutes an abuse of the judicial process.  <u>Hensley v. Alcon Labs., Inc.</u>, 277 F.3d 535, 542 (4th Cir. 2002); <u>Silvestri v. Gen. Motors Corp.</u>, 271 F.3d 583, 590 (4th Cir. 2001); <u>United States v. Shaffer Equip. Co.</u>, 11 F.3d 450, 461-62 (4th Cir. 1993). "The policy underlying this inherent power of the courts is the need to preserve the integrity of the judicial process in order to retain confidence that the process works to uncover the truth."  <u>Silvestri</u>, 271 F.3d at 590.  The most powerful sanction in the district court's quiver is its inherent power to dismiss a case with prejudice.  <u>Shaffer</u>, 11 F.3d at 462; <u>Hensley</u>, 277 F.3d at 542.   "Since orders dismissing actions are the most severe, such orders must be entered with the greatest caution."  <u>Shaffer</u>, 11 F.3d at 462.

 As a result of the severity of the sanction, a district court may only dismiss an action with prejudice upon a finding of bad faith or similar abuse of the judicial process.  <u>Hensley</u>, 277 F.3d at 542.  As the Fourth Circuit explained in <u>Shaffer</u>, "when a party deceives a court or abuses the process at a level that is utterly inconsistent with the orderly administration of justice or undermines the integrity

of the process, the court has the inherent power to dismiss the action." 11 F.3d at

462. To aid district courts in wielding their inherent power, the Fourth Circuit has

set forth six factors that courts must consider prior to dismissing a case with

prejudice. Id. These six factors include:

> (1) the degree of the wrongdoer's culpability; (2) the extent of the
> client's blameworthiness if the wrongful conduct is committed by its
> attorney, recognizing that we seldom dismiss claims against blameless
> clients; (3) the prejudice to the judicial process and the administration of
> justice; (4) the prejudice to the victim; (5) the availability of other
> sanctions to rectify the wrong by punishing culpable persons,
> compensating harmed person, and deterring similar conduct in the future;
> and (6) the public interest.

Id. at 462-63. Mindful of the severity of an order dismissing an action, and after

careful consideration of the record and each of the factors set forth by the Fourth

Circuit in Shaffer, the Court finds that Plaintiff and Kitchen have repeatedly

attempted to deceive and defraud the Court, undermined the integrity of the

judicial process, and engaged in an ongoing abuse of the judicial process that

warrants this Court's exercise of its inherent power to dismiss this action with

prejudice. See id. at 462.

### A.    Plaintiff and Kitchen have Perpetrated a Fraud on the Court

As a threshold matter, the Court finds that the five invoices submitted by

Kitchen and Plaintiff were fabricated. In addition, the affidavits submitted by

Plaintiff and Kitchen are also both false. (#51-1 & #51-2.) Then, in an effort to cover up this fraud on the Court, Kitchen perpetuated another fraud on the Court in his Response to the Defendants' Motion to Dismiss.

The uncontroverted evidence offered at the hearing was that Kitchen fabricated the invoices by using the template contained on a laptop computer - a laptop that was presented to the Court in pieces upon the entry of an Order directing Plaintiff and Kitchen to turn over the laptop to counsel so that it could be examined by a forensic expert to determine whether the invoices were fabricated.[2] Having had the benefit of observing the witness, independently questioning the witness, and listening to his testimony, the Court finds the testimony of Eldridge as to the fabrication of the invoices to be credible. Finally, the Court notes that neither Plaintiff nor Kitchen testified at the hearing or offered affidavits denying that they fabricated the documents at issue.

Moreover, Eldridge's testimony is supported by an independent review by the Court of the invoices at issue, as well as the other documents in the record. The five invoices submitted by Kitchen and Plaintiff were for nearly identical work

---

[2] Of course, only the plastic pieces of the laptop casing were "recovered" by Kitchen; the hard drive was not recovered. The Court acknowledges that no evidence was introduced at the hearing demonstrating that Kitchen intentionally destroyed the laptop in response to a Court Order directing him to turn it over so that a forensic expert could examine the laptop and determine the date the five invoices at issue were created, which would be grounds to hold him in contempt of Court. The Court, however, was unable to question Kitchen regarding the destruction of the laptop because he was not called to testify and was not present at the hearing.

on DHL vehicles - washing and drying vehicles.  Although this work was allegedly done in-house in Hendersonville, the DHL customers who own the vehicles that the work was allegedly performed on were located in Greenville, South Carolina, Charlotte, North Carolina, Savannah, Georgia, and Upper Marlboro, Maryland.  To suggest that a company drove their vehicle from Maryland to Hendersonville in order to participate in a free vehicle washing  demonstration is patently absurd.[3]  Mobile 360 was not in the business of washing vehicles and charging its clients for that work (Hr'g Tr. 81, Jul. 15, 2011),  and most of its work was done onsite at the customer's location (Hr'g Tr. 38, Jul. 15, 2011).  In fact, On Road Express, the customer located in Greenville has no records of an invoice matching the one submitted by Kitchen and Plaintiff for work done on its vehicles.  (Cantrell Aff. ¶ 4-6, Aug. 6, 2008 (#75-5).)

The Court also finds that the work journal submitted by Plaintiff was submitted in an attempt to defraud the Court and hinder the administration of justice.  In her affidavit, Plaintiff states that she recorded her hours each day in the notebook and would report her hours to Eldridge daily.  (Pl.'s Aff. ¶ 5 (#51-1).)

---

[3]  At the hearing, counsel for Kitchen and Plaintiff attempted to offer yet another explanation for the host of inconsistencies in the evidence by arguing that the invoices pertained to vehicles owned by Auto Advantage, which Plaintiff and Kitchen were washing (Hr'g Tr. 115, Jul. 15, 2011).  Not only is such an assertion not supported by the evidence in the record, it is contradictory to the explanation offered by Kitchen and even the invoices themselves.

Eldridge, however, testified that Plaintiff never reported her hours to him, and that he had never seen the work hours notebook.[4] (Hr'g Tr. 40-41.) In addition, the work journal suggest that Mobile 360 owed Plaintiff over $90,000 in hourly wages for the work she performed removing dents out of vehicles for a period of approximately six months. (Pl.'s Aff. ¶¶ 2-5 (#51-1); Ex. A to Pl.'s Aff. (#51).) This was in addition to the thirty percent she was to receive for the estimating work she performed. (Pl.'s Aff. ¶ 2 (#51-1).) Mobile 360, however, did not even gross this much money during the entire time period it was in existence. (Hr'g Tr. 41-42.)

Attached to Kitchen's affidavit was his exhibit of the hours he contended he worked. (Kitchen Resp. Mot. Dismiss (#51-5).) In this work journal, Kitchen reports that he worked eleven hours on September 31, 2006, a day that does not exist on the calender. Moreover, in their responses to Defendants' Motion to Dismiss alleged that the entries in the journal were most likely not prepared contemporaneously with the dates as Plaintiff stated, Plaintiff admitted that their listings of work hours were copies. (Pl.'s Resp. Mot. Dismiss at p. 9 (# 82); Kitchen's Resp. Mot. Dismiss at 11 (#84).) According to Plaintiff, she made pencil copies of the original work hours journal, and Kitchen mistakenly turned

---

[4] The Court finds the testimony of Eldridge credible as to the work journals.

over one of the copies, rather than the original.   (Pl.'s Resp. Mot. Dismiss at p. 9 (#82); Kitchen's Resp. Mot. Dismiss at 11 (#84).)  Plaintiff and Kitchen also contend that the mistakes made in the work journal were the result of the toxins they were exposed to by the Defendants.   (Pl.'s Resp. Mot. Dismiss at p. 9-10 (#82); Kitchen's Resp. Mot. Dismiss at 11 (#84).)  Again, the Court finds that the work journals of Kitchen and Plaintiff, their affidavits, and the subsequent explanation regarding the work journals were all submitted with the intent of deceiving the Court and hindering the administration of justice.

**B.     Dismissal with Prejudice is Warranted in this Case**

Having determined that Plaintiff and Kitchen attempted to defraud the Court and abused the judicial process, the Court next turns to whether the exercise of the Court's inherent power to dismiss an action is warranted in this case.  After careful consideration of the six factors set forth in <u>Shaffer</u>, the Court finds that dismissal is warranted in this case.

In considering the first two factors, the Court finds that the level of culpability for Plaintiff and Kitchen is high.  These were not simple mistakes made by a party or witness.  Rather, Plaintiff and Kitchen intentionally fabricated documents in an effort to defeat Defendant Auto Advantage's Motion for Summary Judgment.  Not only did they submit false documents to the Court, but

they submitted false affidavits. Finally, they perpetuated this fraud on the Court by offering incredulous explanations for the inconsistencies in the documents. This is not a case where the attorney is to blame for the wrongful conduct.

Third, the actions of Plaintiff and Kitchen have prejudiced both the judicial process and the administration of justice. By perpetrating a fraud on the Court and the opposing side in an attempt to defeat summary judgment, and making unsubstantiated allegations of serious misconduct in their pleadings, Plaintiff and Kitchen have attempted to make a mockery of the judicial system and this Court. The fabricated documents and false affidavits were offered specifically to defeat a pending summary judgment motion and create a question of material fact as to whether Defendant Auto Advantage employed Plaintiff and Kitchen. In addition, Plaintiff submitted a fabricated work journal in an attempt to demonstrate significant damages. The seriousness of such conduct and the impact on the integrity of the judicial system cannot be overstated.

Fourth, both the Court and Defendants have suffered prejudice as a result of the conduct of Plaintiff and Kitchen. They have attempted to defraud the Court and Defendants and forced both Defendants and the Court to spend a substantial about of resources addressing their conduct. This conduct has delayed these proceedings and prevented the "just, speedy, and inexpensive determination" of

this dispute.  Fed. R. Civ. P. 1.

Fifth, the Court has considered whether a lessor sanction would rectify the wrong and deter similar conduct in the future.  The Court has considered various lesser sanctions, including a dismissal without prejudice, monetary sanctions, a partial dismissal, and striking the evidence and testimony at issue.   The Court, however, finds that a sanction other than dismissal would not be sufficient in light of the blatant conduct of Plaintiff and Kitchen, who have shown a repeated disregard for the integrity of the judicial process.  Such conduct cannot be tolerated in the federal court system,  and the Court must deter similar conduct, both by Plaintiff and Kitchen and others, in the future.  A dismissal with prejudice of this case is the only sanction serious enough to rectify the wrongs committed by Plaintiff and Kitchen and to deter similar conduct in the future.

As to the last factor, the public interest is best served by ensuring the integrity of the judicial system and the orderly administration of justice.  Although the public has an interest in deciding cases on the merits, it also has a significant interest in having its cases decided on the law and facts, free of false, fabricated, or fraudulent testimony and evidence.  It is up to the Court to exercise its inherent power to ensure the integrity of the judicial system.  See Shaffer, 11 F.3d at 461-62.  Accordingly, the Court finds that the dismissal of Plaintiff's Amended

Complaint (#48) and Kitchen's Amended Counterclaim (#47) with prejudice is an appropriate exercise of the Court's inherent power.

**III     Conclusion**

The Court **GRANTS** the Motion to Dismiss (#74).  Pursuant to the Court's inherent power, the Court **DISMISSES with prejudice** Plaintiff's Amended Complaint (#48) and Kitchen's Amended Counterclaim (#47).  The Court **DIRECTS** the Clerk to **CLOSE** this case.

Signed: August 29, 2011

Dennis L. Howell
United States Magistrate Judge